Argued and submitted December 16, 1996, reversed and remanded in part;
otherwise affirmed July 2, 1997

Warde H. ERWIN,
*Appellant,*

*v.*

OREGON STATE BAR
and its Board of Governors,
as Executive Administrators,
*Respondents.*

(95 04 241; CA A92236)

941 P2d 1094

Warde H. Erwin argued the cause and filed the briefs *pro se*.

Donald W. McEwen argued the cause for respondents. With him on the brief was Christine Coers-Mitchell.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff appeals a judgment dismissing this declaratory judgment action following the trial court's entry of an order dismissing, pursuant to ORCP 21, all seven of the claims asserted. We conclude that the trial court erred in dismissing three of the claims and, therefore, affirm in part and reverse in part and remand.

Plaintiff's complaint alleges seven separate "counts,"[1] in which he challenges the constitutionality and statutory validity of a variety of practices of defendants, the Oregon State Bar (Bar) and its Board of Governors (Board or BOG), regarding the assessment of contributions to the professional liability fund (PLF) pursuant to ORS 9.080[2] and 9.200.[3] Common to all counts are the following allegations:

---

[1] What plaintiff labels "counts" actually are "claims." Under ORCP 16 B, a count is an alternative theory of recovery for a claim. Nevertheless, for the sake of consistency with plaintiff's allegations, we follow his lead in referring to what is contained in his complaint.

[2] ORS 9.080(2)(a) provides, in part:

"The board shall have the authority to require all active members of the state bar engaged in the private practice of law * * * to carry professional liability insurance and shall be empowered * * * to do whatever is necessary and convenient to implement this provision, including the authority to own, organize and sponsor any insurance organization authorized under the laws of the State of Oregon and to establish a lawyer's professional liability fund. This fund shall pay, on behalf of active members of the state bar engaged in the private practice of law * * *, all sums as may be provided under such plan which any such member shall become legally obligated to pay as money damages because of any claim made against such member as a result of any act or omission of such member in rendering or failing to render professional services for others in the member's capacity as an attorney * * *. The board shall have the authority to assess each active member of the state bar * * * for contributions to such fund, to establish definitions of coverage to be provided by such fund and to retain or employ legal counsel to represent such fund and defend and control the defense against any covered claim made against such member."

[3] ORS 9.200 provides, in part:

"(1) Any member in default in payment of membership fees established under ORS 9.191(1) for a period of 90 days, or any person in default in payment of membership fees established under ORS 9.191(2) for a period of 30 days after admission or as otherwise provided by the board, or any member in default in payment of assessed contributions to a professional liability fund under ORS 9.080(2) for a period of 30 days, shall, after 60 days' written notice of the delinquency, be suspended from membership in the bar. The notice of delinquency shall be sent by the executive director, by registered or certified mail, to the member in default at the last-known post-office address of the member. Failure to pay the fees or contributions within 60 days after the date of the deposit of the notice in the post office shall automatically suspend the

"1

"Plaintiff is a member of the Oregon State Bar and is duly licensed to actively practice the profession of law in the State of Oregon, and has been so admitted and licensed continuously since September 7, 1939.

"2

"Plaintiff is representative of each and every member of the Oregon State Bar similarly engaged in and licensed to actively practice the profession of law as members of a class for whose benefit this litigation is instituted pursuant to ORCP Rule 32.

"* * * * *

"4

"Oregon has adopted an integrated bar association to which every lawyer practicing the profession in the State of Oregon, must, after securing academic knowledge, training, and education and acquiring special knowledge and skill by examination, become a member and must pay dues which are devoted to the advancement of the science of jurisprudence and the improvement of the administration of justice."

In the third count, plaintiff alleges:

"11

"Suspension from the practice of law is a deprivation of liberty or property within the meaning of the 'due process clause' of the UNITED STATES CONSTITUTION, Amendment XIV.

"12

"Suspension from the practice of law is an injury done to a member of the Oregon State Bar or his person, property, and reputation.

"* * * * *

---

delinquent member. The names of all members suspended from membership for nonpayment of fees or contributions shall be certified by the executive director to the State Court Administrator and to each of the judges of the Court of Appeals, circuit, tax and district courts of the state."

"15

"BOG has rejected the authority granted under ORS 9.080(2)(a) to establish a professional liability insurance agency and has opted to and has adopted and established a lawyers' professional liability fund, which it denominates as a 'claims-made indemnity fund.'

"16

"BOG has made assessments against lawyers engaged in the active practice of law including all the members of the class and including plaintiff and has collected and holds in reserve assets totalling many millions of dollars in value in the name of said Fund and contrary to the provisions of ORS 9.080.

"17

"Defendant[s] ha[ve] collected such assessments under penalty of withdrawing, suspending, or revoking the license and authority to practice the profession of law in the State of Oregon, upon failure to pay such assessments and has withdrawn and is continuing to withdraw, suspend, or revoke the right to practice the legal profession for the sole and only reason that the member of the Bar has failed to pay an assessment levied by BOG.

"18

"Automatic suspension under ORS 9.200 does not constitute due process of law.

"* * * * *

"20

"A state may require high standards of qualification before being admitted to membership in the Bar, but any qualification must have rational connection with the applicant's fitness or capacity to practice law, and neither ORS 9.080 [n]or 9.200 contain any reference to fitness or capacity.

"* * * * *

"22

"Plaintiff requests a declaration of this court pursuant to ORS 28.020 and ORS 28.110 as follows:

"No member of the Bar of the State of Oregon shall be suspended from the practice of law solely on the basis of failing to pay a monetary assessment levied by defendant[s] in order to provide a fund other than to indemnify a member for any money damages such member becomes legally obligated to pay as a direct result of a claims [sic] made against such member as a result of the member's actions in rendering or failing to render professional legal services in the member's capacity as an attorney or resulting from the actions of others for whom the member is legally responsible."

(Underscoring and capitalization in original.) In the fourth count, plaintiff alleges:

"26

"BOG contends that it is justified in depriving a member of his right to practice law (property) because the assessments are used to

" 'Provide mandatory coverage at a minimum cost to attorneys WHILE ASSURING THE PUBLIC THAT EACH ATTORNEY IN PRIVATE PRACTICE WOULD HAVE CERTAIN MINIMUM LEVELS OF PROTECTION.'

"27

"The taking of property by assessment was therefore a taking of property for a public use without compensation and without due or any process in violation of both the Federal and State Constitutional prohibitions set forth in paragraph[s] 23 and 24 of this complaint.

"28

"Plaintiff requests a declaration by this court as follow[s]:

"No member of the Oregon State Bar shall be suspended from the practice of law as a result of failure to pay a monetary assessment levied by BOG for the purpose of providing funds for any purpose other than for the indemnification of any amount of monetary damages which such member has become legally obligated to pay as monetary damages which was the direct result of a claims [sic] made against such member rendering or failing to render professional services in the member's capacity as an attorney or

resulting from the acts of others for whom the member is legally responsible."

(Underscoring and capitalization in original.) In the sixth count, plaintiff alleges:

"42

"Defendant[s] ha[ve] made expenditures from funds assessed against class members and collected under penalty of prevention from the practice of law for nonpayment in order to fund the claims made indemnity fund under ORS 9.080.

"Two kinds of assessments are made by defendants:

"1. Annual assessments intended to cover all expenses allocated to and received;

"2. Supplemental underwriting assessments (herein SUA) under which accounts are set up for each member of the class, and all payments made by PLF to others are recorded as a charge against the member's account.

"43

"BOG uses the funds collected by such assessment for numerous activities unauthorized by ORS 9.080 to the extent of hundreds of thousands of dollars annually, the enumeration of which are reserved for trial.

"44

"Plaintiff requests a declaration of this court as follows:

"Other than funds collected under ORS 9.1[9]1, BOG shall expend no funds collected by it under authority of ORS 9.080 except for the direct indemnification of a bar member who has become legally obligated to pay to a person or entity to whom or to which the Bar member has furnished or failed to furnish professional legal services and who or which has as a direct result of such act or failure to act suffered monetary damage and made a claim therefor against such member and has secured a legal determination of such monetary damage."

(Underscoring in original.)

Defendants moved to dismiss all claims for failure to state a claim, ORCP 21 A(8), and moved to strike all claims as

sham and frivolous, ORCP 21 E. The trial court allowed the motions to dismiss and further allowed the motion to strike the third and fifth counts. Plaintiff declined to replead and appealed instead.

On appeal, plaintiff contends that the trial court erred in allowing the Rule 21 motions, because dismissal for failure to state a claim is not an appropriate means of dismissing a declaratory judgment action. He also contends that, in any event, he has stated facts sufficient to withstand a motion to dismiss at the pleading stage. Defendants concede that dismissal of a declaratory judgment action on the pleadings is appropriate only if the complaint fails to allege a justiciable controversy. They nevertheless contend that plaintiff's allegations fail to accomplish even that.

■ ■    At the outset, we note that plaintiff is correct in asserting that a failure to state a claim is not a proper basis for dismissing a declaratory judgment action. As we stated in *Clark v. City of Albany*, 142 Or App 207, 212, 921 P2d 406 (1996):

> "As a rule, an action for declaratory judgment may not be dismissed for failure to state a claim. If the complaint presents a justiciable controversy, a motion to dismiss brought under ORCP 21 A(8) should be denied."

*See also Advance Resorts of America, Inc. v. City of Wheeler*, 141 Or App 166, 180, 917 P2d 61, *rev den* 324 Or 322 (1996) (same); *Reynolds v. State Board of Naturopathic Exam.*, 80 Or App 438, 441-42, 722 P2d 739 (1986) (same). A complaint in a declaratory judgment action states a "justiciable" controversy if there are allegations that

> "there is an actual and substantial controversy between parties having adverse legal interests. The controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue."

*Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) (citation omitted). To survive a motion to dismiss, a complaint alleging a right to relief under ORS 28.080 must allege " 'some injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of the law.' " *Eckles v. State of Oregon*, 306 Or

380, 385, 760 P2d 846 (1988), *appeal dismissed* 490 US 1032 (1989) (quoting *Budget Rent-A-Car v. Multnomah Co.*, 287 Or 93, 95, 597 P2d 1232 (1979)). In examining the sufficiency of the allegations in that regard, we assume the truth of all allegations of fact and draw all inferences in favor of plaintiff. *Patterson v. Wasner*, 128 Or App 254, 256, 875 P2d 506 (1994).

With the foregoing principles in mind, we turn to the allegations of plaintiff's complaint. We first note that, upon careful review of the complaint, the dismissal of all counts but three—the third, fourth and sixth—must be affirmed. In each case, plaintiff failed to allege more than an abstract interest in the validity of the challenged laws, and we therefore affirm the dismissal of those counts without further discussion.

In Count 3, plaintiff alleges that the automatic suspension provision of ORS 9.200 for nonpayment of PLF assessments is unconstitutional because it deprives a nonpaying member of due process of law. Plaintiff seeks a declaration of the court that "[n]o member of the Bar * * * shall be suspended from the practice of law solely on the basis of failing to pay a monetary assessment levied by defendant[s]" to provide a fund for purposes other than indemnification. Admittedly, Count 3 is not a bastion of clarity. Nonetheless, in construing all inferences in favor of plaintiff, we hold that he has pleaded a justiciable controversy. Plaintiff alleges that he is a member of the Bar required to pay PLF assessments, that the Bar holds money in reserve assets in violation of its statutory authority, that nonpayment of the assessments results in automatic suspension and that such suspension "does not constitute due process of law."

Defendants insist that plaintiff "requests relief related to special underwriting assessments," for which he has not alleged he has been charged, and that plaintiff has not "alleged any facts that suggest that he is under threat of suspension for failure to pay a special underwriting assessment."[4] Plaintiff's allegations in Count 3 simply do not complain of a special underwriting assessment. Plaintiff has

---

[4] A "basic assessment" is the PLF assessment imposed on every lawyer who satisfies the mandatory coverage requirements of ORS 9.080. A "special underwriting assessment," in contrast, is a surcharge

challenged the basic assessment by alleging that, by virtue of his Bar membership, he must pay an assessment under ORS 9.080, and if he fails to pay, he will be suspended pursuant to ORS 9.200. Furthermore, plaintiff does not have to be suspended before he can state a justiciable claim. *Gaffey v. Babb*, 50 Or App 617, 621, 624 P2d 616, *rev den* 291 Or 117 (1981) ("No actual wrong need be committed or loss incurred in order to invoke declaratory relief."). The trial court erred in dismissing Count 3.

■     The trial court also granted defendants' motion to strike Count 3 under ORCP 21 E(1). Our standard of review of the granting of a motion under ORCP 21 E is the same as our review of motions granted under ORCP 21 A. *Doyle v. Oregon Bank*, 94 Or App 230, 232, 764 P2d 1379 (1988), *rev den* 307 Or 571 (1989) ("We should accept as true all well-pleaded allegations and any facts that might be adduced as proof of those allegations."). The court may order a pleading stricken if it is a

"sham, frivolous, or irrelevant pleading or defense or any pleading containing more than one claim or defense not separately stated * * *."

ORCP 21 E(1).

Defendants argue that the trial court's granting of the ORCP 21 E motion striking Count 3 should be affirmed, because Count 3 contains "more than one claim not separately stated" and because plaintiff's allegations in Count 3 are "frivolous." We disagree with defendants that Count 3 states more than one "claim." Construing the allegations in favor of plaintiff, we conclude that plaintiff does challenge, while perhaps inartfully, the automatic suspension provisions of ORS 9.200 as violative of due process requirements. Within Count 3, plaintiff also alleges that the Board has

_____

"assessed on January 1 of each year * * * based upon the total of all payments for indemnity and expense * * * made on behalf of a Covered Party in excess of an aggregate amount of $10,000 per claim or group of related claims (the 'Base Amount') during the period July 1, 1987 through September 30 of the prior year for all claims which are settled or closed by the Fund during the five-year period ending September 30 of the prior year. The surcharge shall be equal to 2% of the Base Amount so calculated."

Professional Liability Fund, 1996 Claims Made Plan, PLF Policy 3.500(B)(1)—Plan for Special Underwriting Assessment.

made assessments contrary to the provisions of ORS 9.080; however, that factual allegation is a predicate to the allegation that the illegally collected assessments are extracted under the threat of suspension, in violation of plaintiff's and other members' due process rights. Accordingly, we do not conclude that Count 3 states more than one "claim." In the light of our conclusion that the allegations meet the minimal pleading requirements for a declaratory judgment action, we do not conclude, as defendants urge, that plaintiff's allegations in Count 3 are frivolous. Therefore, we also reverse the trial court's striking of Count 3.

■ Count 4 alleges that the suspension of a member of the Bar from the practice of law for failure to pay the PLF assessment is a taking of property without just compensation in violation of both the Oregon and United States Constitutions. Again, defendants contend that plaintiff requests relief related to special underwriting assessments, but fails to allege that he has or expects to be subject to a claim or that such a claim has resulted or may result in a special underwriting assessment being levied against him. Plaintiff responds that Count 4 does not concern the special underwriting assessment and that he has stated a justiciable claim.

Construing all inferences in favor of plaintiff, we hold that the trial court erred in dismissing Count 4. Plaintiff has alleged that he is a member of the Bar and that he is required to pay basic assessments to the PLF. The fact that the assessments plaintiff pays are not "special underwriting assessments" does not negate his allegation that the Bar requires the payment of assessments, with suspension imposed for nonpayment, and that such assessments are an unconstitutional taking of property. Plaintiff has alleged, not that special underwriting assessments have been imposed on him, but alleges only the imposition of general assessments on him under the threat of suspension. He seeks a declaration that neither he nor any other member of the Bar will be suspended for nonpayment of any assessment not used for statutorily declared purposes. Plaintiff undeniably has an economic interest in the payment of any assessment, and his allegations that the assessments are extracted unconstitutionally are sufficient to show that his present rights are

affected and that such rights would be litigated in the proceedings. *See, e.g., Morse Bros. Prestress v. City of Lake Oswego*, 55 Or App 960, 964, 640 P2d 650 (1982) (the plaintiff had more than an abstract interest in seeing that the city complied with its statutory requirements because the plaintiff had an economic interest in protecting its ability to bid on public contracts). Because plaintiff has stated a justiciable controversy, the trial court erred in dismissing Count 4.

■    Count 6 alleges that the Bar collects two kinds of assessments, "Annual assessments" and "Supplemental underwriting assessments." Plaintiff further alleges that the Board "uses the funds collected by such assessment for numerous activities unauthorized by ORS 9.080 to the extent of hundreds of thousands of dollars annually, the enumeration of which are reserved for trial." Drawing all inferences in favor of plaintiff, we conclude that plaintiff has stated a justiciable controversy. He has alleged that he is a member of the Bar who must pay the annual assessments. His allegations that the funds collected are used for unauthorized purposes sufficiently articulate a dispute based on present facts. Moreover, plaintiff has alleged a direct controversy affecting his present rights and interests—the payment and use of mandatory assessments—that would be resolved in this litigation by a judicial determination of defendants' existing statutory authority. *See, e.g., Brown*, 293 Or at 450-51 (justiciable controversy exists when litigation involves present facts and an existing statutory duty). Consequently, the trial court erred in dismissing plaintiff's claim articulated in Count 6.

Reversed and remanded as to Counts 3, 4 and 6; otherwise affirmed.