On intervenors-appellants' petition for reconsideration filed August 24, 2005; petition for reconsideration allowed; circuit court's January 16, 2003, judgment vacated and this court's decision (339 Or 113, 117 P3d 1001 (2005)) otherwise adhered to as modified June 20, 2006

CITY OF EUGENE,
a municipal corporation,
*Petitioner-Respondent,*

*v.*

State of Oregon,
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent,*

*and*

Karen JENKINS,
Diane Davidson, Arlyn Stepper,
Gary Gillespie, Ann Montague,
Judith Ann Sugnet, Gary Nauta, and Roger Garver,
*Intervenors-Appellants.*

(CC 99C-12794)

LANE COUNTY,
City of Eugene, Multnomah County,
City of Portland, City of Roseburg,
City of Huntington, and Canby Utility Board,
municipal corporations,
*Petitioners-Respondents,*

*v.*

STATE OF OREGON,
*Respondent-Respondent,*

*and*

State of Oregon,
by and through
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent,*

*and*

Karen JENKINS,
Diane Davidson, Arlyn Stepper,
Gary Gillespie, Ann Montague,
Judith Ann Sugnet, Gary Nauta, and Roger Garver,
*Intervenors-Appellants.*

(CC 99C-12838)

CITY OF EUGENE,
a municipal corporation,
by and through Eugene Water & Electric Board,
*Petitioner-Respondent,*

*v.*

State of Oregon,
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent,*

*and*

Karen JENKINS,
Diane Davidson, Arlyn Stepper,
Gary Gillespie, Ann Montague,
Judith Ann Sugnet, Gary Nauta, and Roger Garver,
*Intervenors-Appellants.*

(CC 99C-20235)

ROGUE RIVER VALLEY IRRIGATION DISTRICT,
a municipal corporation,
*Petitioner-Respondent,*

*v.*

State of Oregon,
PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent-Respondent.*

(CC 00C-16173)
(CA A121400; SC S50617)

137 P3d 1288

Michael J. Morris, of Bennett, Hartman, Morris & Kaplin LLP, Portland, filed the petition for reconsideration. With him on the petition were Gregory A. Hartman and Aruna A. Masih.

No appearance *contra.*

Before Carson,* Chief Justice, and Gillette, Durham, Riggs, De Muniz,** Balmer, and Kistler, Justices.

DE MUNIZ, C. J.

---

* Chief Justice when petition was filed.

** Chief Justice when decision was rendered.

**DE MUNIZ, C. J.**

Intervenors petition for reconsideration of this court's decision in *City of Eugene v. PERB,* 339 Or 113, 117 P3d 1001 (2005), that dismissed their appeal as moot. Intervenors are individual PERS members who intervened in the litigation below to defend, in part, employer contribution rate orders issued by the Public Employees Retirement Board (PERB) in 1998 and 2000. Because we concluded that their appeal had become moot, intervenors now ask this court, in keeping with *First Commerce of America v. Nimbus Center Assoc.,* 329 Or 199, 986 P2d 556 (1999) (*Nimbus*), to vacate the judgment from which they sought to appeal. We allow the petition for reconsideration and now vacate that judgment.

In *City of Eugene*, this court concluded that most of the issues presented by intervenors' appeal from the trial court's January 16, 2003, judgment[1] had become moot through a combination of legislative amendments to the Public Employees Retirement System (PERS) and this court's decision in *Strunk v. PERB*, 338 Or 145, 108 P3d 1058 (2005). We noted that, although neither of those events had disposed of the one remaining issue in that case, that issue nevertheless was moot as well. That issue involved employer contribution rate orders that PERB issued in 1998 and 2000. The trial court had found that, between 1996 and 2000, PERB had issued contribution orders that incorrectly required employers to match members' variable account earnings at the time of their retirement. Consequently, the trial court concluded that PERB erroneously had established employer contribution rates for 1998 and 2000 that were higher than they would have been had PERB calculated the earnings-match benefits correctly. The trial court went on to set out

---

[1] That judgment resolved all the claims raised by the public employers in this case. A second trial court judgment, issued on April 23, 2003, subsequently disposed of all the claims raised by intervenors. Although PERB and one public employer, Eugene Water & Electric Board (EWEB), filed notices of cross-appeal from that second judgment, both appeals were later dismissed after those parties moved to do so following their settlement. As a result, the second judgment in this case has not been part of this, or any other, appeal, and none of the parties adversely affected by it have sought to free themselves from its effects through vacatur. Consequently, that judgment is presently not before this court.

what it concluded was the correct methodology for determining those benefits.[2] As part of their appeal, intervenors sought to defend PERB's prior contribution rate orders and the methodology that PERB had used to calculate employee benefits.

While that appeal was pending, PERB and the public employers reached a settlement that resulted in PERB's issuing new contribution rate orders that conformed to the trial court's judgment. As a result of that settlement and the new superseding orders that PERB issued, this court concluded that any decision that it might render on appeal regarding the old contribution orders no longer would have a practical effect on the rights of the parties. Consequently, we dismissed intervenors' appeal because it did not present a justiciable issue.

In seeking reconsideration, intervenors now argue that, because we dismissed their appeal on mootness grounds, we should vacate the underlying judgment pursuant to *Nimbus*. As we shall explain, intervenors are correct that vacatur is appropriate here, but their reliance on *Nimbus* requires some clarification in light of this court's recent reexamination of that case in *Kerr v. Bradbury*, 340 Or 241, 131 P3d 737 (2006).

In *Nimbus*, this court stated that

"the better practice when a case becomes moot on appeal or on review is to vacate both the decision of the Court of Appeals and the circuit court judgment. Reversal implies that a court incorrectly decided the case on the merits. Vacation of a decision, by contrast, suggests nothing about

---

[2] The trial court concluded:

"ORS 238.260(12) and ORS 238.300(2)(a) require that the PERB initially calculate the Variable Annuity Account earnings on the same basis as the regular annuity account earnings, and both the regular account and Variable Account annuities must then be compiled together to determine the regular service retirement allowance under all retirement alternatives before that retirement allowance is subjected to ORS 238.260(12)'s adjustment for participation in the variable. The PERB had misinterpreted and violated the requirements of ORS 238.260(12) and ORS 238.300(2)(a) by requiring Petitioners to match the amount of earnings allocated to members' Variable Annuity Accounts."

the propriety of the decision on the merits, because it conveys the message that the decision on the merits ought not to have been rendered at all (if the controversy was moot when the case was decided) or ought not have prospective effect (if the controversy became moot after the case was decided)."

329 Or at 208-09 (internal citation omitted). This court subsequently reevaluated that position in *Kerr* and explained, among other things, the proper application of vacatur when parties settle a controversy:

" 'From the beginning we have disposed of moot cases in the manner " 'most consonant to justice' * * * in view of the nature and character of the conditions which have caused the case to become moot." The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action.

" "* * * A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. The same is true when mootness results from unilateral action of the party who prevailed below. Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice.' "

*Kerr*, 340 Or at 249 (quoting *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 US 18, 24-25, 115 S Ct 386, 130 L Ed 2d 233 (1994) (original emphasis deleted). *Kerr* went on to hold that, to the extent that *Nimbus* could be read to require vacatur of all judgments rendered in controversies subsequently mooted by settlement, such a reading was incorrect. *Kerr*, 340 Or at 250. Instead, *Kerr* established that vacatur is an extraordinary remedy to which a party must show an equitable entitlement.

As the text from *Kerr* quoted above makes clear, in deciding whether to vacate a judgment that has become moot, a significant factor in that consideration is whether the party seeking vacatur contributed to the events that mooted the underlying controversy. Here, it is clear that intervenors'

actions did not contribute to the events that caused the issue of variable account employer contributions to become moot. That issue became moot solely as a result of the settlement that PERB and the public employers reached in this case, a settlement in which intervenors did not join.

Intervenors' lack of participation by itself, however, is not necessarily enough to justify vacatur. As this court stated in *Kerr*, intervenors must *show* that equity calls for vacatur, *i.e.*, intervenors must demonstrate that they "ought not in fairness [to] be forced to acquiesce in the judgment." We are satisfied that intervenors have made out such a case here. Intervenors argue that leaving the judgment in place would impair their ability to challenge the new rate orders that PERB has issued pursuant to the settlement; intervenors are correct. The following hypothetical illustrates their dilemma. Suppose that intervenors challenge the new rate orders that PERB has issued. Suppose further that a lower court agrees with their challenge and rules that those orders are unlawful. Unless we vacate the circuit court's earlier judgment in this case, that judgment would remain in place and, by its terms, require PERB to issue the same rate orders using the very methodology that intervenors contend is unlawful. In short, so long as the earlier circuit court judgment remains, it effectively bars intervenors from prevailing in their subsequent action, even in the face of a favorable holding. Only by vacating the earlier judgment in this case, which intervenors were unable to challenge on appeal, can we eliminate that state of affairs. Equity thus justifies vacating the judgment below, and we now do so. *See United States v. Munsingwear*, 340 US 36, 39, 71 S Ct 104, 95 L Ed 36 (1950) (vacatur is "duty of the appellate court" when properly requested and supported).

The petition for reconsideration is allowed. The circuit court's January 16, 2003, judgment is vacated and this court's decision is otherwise adhered to as modified.